**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:16-cv--00051-RJC-DCK**

| | | |
|---|---|---|
| MY'KA EL a/k/a MICHAEL EUGENE YOUNG, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | **ORDER** |
| R. REESE, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**THIS MATTER** comes before the Court on Defendant's Motion for Judgment on the

Pleadings, (Doc. No. 15), and the memoranda in support of and in opposition to the motion,

(Doc. Nos. 16, 18).  Defendant did not file a reply brief and the deadline for doing so has passed.

The motion is ripe for adjudication.  For the reasons that follow, Defendant's motion is granted.

**I.      BACKGROUND**

A.      Procedural Background

Pro se Plaintiff My'Ka El a/k/a Michael Eugene Young ("Plaintiff") filed this action on

February 1, 2016.  (Doc. No. 1).  Plaintiff filed an Amended Complaint on February 10, 2016,

(Doc. No. 3), and a Second Amended Complaint on February 17, 2016, (Doc. No. 4).  After its

initial review of the 98-page document, the Court found that Plaintiff's Second Amended

Complaint suffered from numerous deficiencies.  (Doc. No. 5).  Therefore, the Court issued an

order directing Plaintiff to file an amended Complaint particularizing his claims and providing

facts to support his claims.  (Id.).  Plaintiff was warned, among other things, that failure to amend

the Complaint would result in dismissal.  (Id.).  Furthermore, Plaintiff was warned that the Court

will not entertain any claims related to pending state criminal charges and that any claims asserted against defendants arising out of different transactions or occurrences would be dismissed.  (Id.).

Plaintiff filed his three-page Third Amended Complaint on March 31, 2016.  (Doc. No. 8).  Although no claim is clearly articulated in the Third Amended Complaint, and despite using buzzwords such as "cruel and unusual punishment," "due process," and "assault."  Plaintiff appears to assert claims against "Officer R. Reese" for violations of Plaintiff's Fourth Amendment rights under 42 U.S.C. § 1983 for unlawful arrest and use of excessive force.  The Third Amended Complaint refers to "several officer[s] of CMPD" that were allegedly present at the scene, but Plaintiff fails to assert any claim against these unknown officers.  Nonetheless, the Plaintiff's Third Amended Complaint survived initial review under 28 U.S.C. § 1915 as to Defendant Officer R. Reese ("Defendant"), but all claims against other defendants were dismissed. (Doc. No. 9).  On June 6, 2016, Defendant filed his answer to the Third Amended Complain, which, instead of just admissions and denials, contained a detailed account of the underlying encounter from Defendant's perspective.  (Doc. No. 14).  On June 20, 2016, Defendant filed his Motion for Judgment on the Pleadings and memorandum in support in which Defendant argues that Plaintiff's Third Amended Complaint should be dismissed for failure to state a claim and because Defendant is entitled to qualified immunity.  (Doc. Nos. 15, 16).  With the motion, Defendant included a Roseboro Notice warning Plaintiff of the consequences for failure to respond to the motion.  (Doc. No. 15 at 2).  Plaintiff timely filed a Response in Opposition to Defendant's Motion for Judgment on the Pleadings arguing that Defendant's motion should be denied.  (Doc. No. 18).

B.     Factual Background

According to Plaintiff's brief three-page Third Amended Complaint, on August 4, 2014, Plaintiff and Defendant, a Charlotte-Mecklenburg Police Officer, had an encounter in and around Sud Coin Laundry in Charlotte, North Carolina.  (Doc. No. 8).  Plaintiff asserts that Defendant followed him into the laundry mat, approached him from behind, pushed him out of the laundry mat, and forcefully arrested him without providing any explanation as to Plaintiff's alleged misconduct.  (Id. at 1).  Specifically, Plaintiff contends that Defendant approached Plaintiff from behind, pushed him aggressively, grabbed him, and violently assaulted him by "striking Plaintiff with handcuff [sic] . . . not placing Plaintiff in handcuff [sic]."  (Id.).  Additionally, Defendant allegedly detained Plaintiff for four to six hours, handcuffed in the back of his police car, while Defendant threw Plaintiff's belongings on the ground and tore Plaintiff's Moorish American Flag, among other things.  (Id. at 1–2).  Defendant's account of the incident differs dramatically from Plaintiff's Third Amended Complaint in that it provides more detail and conflicting facts, but those factual differences have not been considered except where they have been admitted by Defendant or are undisputed.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss brought under Rule 12(b)(6).  Occupy Columbia v. Haley, 738 F.3d 107, 115 (4th Cir. 2013).  In examining a motion for judgment on the pleadings, a court must accept all well-pleaded factual allegations as true and should view the complaint in a light most favorable to the non-movant, drawing reasonable inferences in its favor.  Mylan Labs. Inc. v. Matkari, 7 F.3d

1130, 1134 (4th Cir. 1993). Judgment on the pleadings may be granted when the undisputed facts show that the moving party is entitled to judgment as a matter of law. Bradley v. Ramsey 329 F. Supp. 2d 617, 622 (W.D.N.C. 2004) (citing Moore's Federal Practice, § 12.38 (3d ed.)). A court may consider the complaint, answer, and any materials attached to those pleadings or motions for judgment on the pleadings "so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see also Fed. R. Civ. P. 10(c) ("[A]n exhibit to a pleading is part of the pleading for all purposes."). Any factual allegations contained in an answer are only taken as true if they do not conflict with the complaint and have not been denied by plaintiff. Alexander v. City of Greensboro, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011) (quoting Jadoff v. Gleason, 140 F.R.D. 330, 331 (M.D.N.C. 1991)). When an answer does not require a responsive pleading, the allegations are assumed denied. Id. (citing Jadoff, 140 F.R.D. at 332); Fed. R. Civ. P. 8(b)(6).

Because Plaintiff is pro se, the Court must liberally construe any inartful pleading. Haines v. Kerner, 404 U.S. 519, 520 (1972). But, courts cannot act as the pro se plaintiff's advocate or develop claims which the plaintiff failed to raise clearly on the face of his complaint. See Gordon v. Leeke, 574 F.2d 1147, 1152 (4th Cir. 1978); see also Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.    DISCUSSION

Plaintiff's Third Amended Complaint does not specifically state any causes of action, but liberally construed, Plaintiff's Third Amended Complaint alleges that Defendant violated Plaintiff's Fourth Amendment rights and therefore violated the Federal Civil Rights Act, 42 U.S.C. § 1983. Section 1983 imposes civil liability upon every person who, under color of law, deprives

another of rights secured by the Constitution and laws of the United States. 42 U.S.C. § 1983.  An arrest made in violation of a person's Fourth Amendment right to be free from unreasonable seizures, therefore, will give rise to a claim under 42 U.S.C. § 1983.  See, e.g., Street v. Surdyka, 492 F.2d 368 (4th Cir. 1974).  Similarly, an assault and battery, or use of excessive force, during an arrest can also form the basis of a Fourth Amendment violation and related 42 U.S.C. § 1983 violation.  See, e.g., Martin v. Gentile, 849 F.2d 863, 867 (4th Cir. 1988) ("[T]he use of excessive force in making an arrest . . . is quintessentially one invoking the protections of the fourth amendment, the only part of the Constitution that speaks directly to seizures of the person." (internal quotation marks omitted)).

A.  Qualified Immunity

Defendant argues that he is protected from suit by qualified immunity and therefore Plaintiff's claims must be dismissed.  (Doc. No. 16 at 8–13).  The doctrine of qualified immunity "protect[s] government officials performing discretionary functions from civil damage suits 'insofar as [the officials'] conduct does not violate clearly established rights of which a reasonable person would have known.'"  Porterfield v. Loft, 156 F.3d 563, 567 (4th Cir. 1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In determining whether qualified immunity applies, courts look at two questions: (1) whether violation of a constitutional right has been alleged, and (2) whether the right was "clearly established" at the time of the alleged violation such that a reasonable officer would have understood that what he was doing violated that clearly established right.  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  The Court is not bound to resolve either of these two questions first.  Pearson v. Callahan, 555 U.S. 223, 236 (2009); see also Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012).  A defendant will be entitled to the protection

of qualified immunity if the answer to either of the two questions posed above is "no." Reichle, 132 S. Ct. at 2093.

Moreover, qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). So long as an officer does not violate a clearly proscribed law, he is entitled to qualified immunity. Mitchell v. Forsyth, 472 U.S. 511, 528 (1985); see also Ashcroft v. al-Kidd, 563 U.S. 731 (2011) (an officer is entitled to qualified immunity unless "'every reasonable official would have understood that what he [was] doing'" violated the Constitution). Indeed, "officers are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992).

"[T]he legal question of a defendant's entitlement to qualified immunity under a particular set of facts should be decided by the court, not by a jury." Willingham v. Crooke, 412 F.3d 553, 560 (4th Cir. 2005). Further, "because qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992) (citing Harlow, 457 U.S. at 815−19; Mitchell, 472 U.S. at 526). But, where a factual dispute exists, "the district court should submit factual questions to the jury and reserve for itself the legal question of whether the defendant is entitled to qualified immunity on the facts found by the jury." Id.

In the context of alleged Fourth Amendment violations, as is the case here, the qualified immunity analysis closely resembles the probable cause analysis in part because both rely on an objective reasonableness standard. Under the probable cause standard, an officer does not violate the Fourth Amendment where the "'facts and circumstances within the officer's knowledge that

are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)).  In other words, the question is not merely whether probable cause existed but rather whether a reasonable officer in the same situation would have believed he had probable cause to arrest.

The qualified immunity standard diverges from the probable cause standard regarding the level of specificity with which the relevant legal right at issue is defined for purposes of the "clearly established" analysis.  Creighton, 483 U.S. at 639.  The legal right cannot be so broadly and generally defined so as to eliminate the touchstone of "objective legal reasonableness" and effectively eliminate qualified immunity in § 1983 cases.  Id.  Thus, the "clearly established" component of the qualified immunity analysis cannot be defined generally as the right to be free from arrest absent probable cause, but rather, the right must be more narrowly defined—"[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Id. at 640.

Here, Defendant did not violate a clearly established constitutional right, nor would a reasonable officer have understood Defendant's actions to have violated a clearly established right. Plaintiff was arrested for violating N.C. Gen. Stat. § 14-223 ("Resisting Officers"), which provides:

> If any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office, he shall be guilty of a Class 2 misdemeanor.

A Magistrate Judge found that Defendant had probable cause to arrest Plaintiff for violation of this statute because Plaintiff walked away from Defendant police officer after being told to stop

while Defendant was conducting a traffic stop. (Doc. No. 14-1 at 1). Moreover, Plaintiff was initially convicted for violating this statute and sentenced to five days imprisonment. (Id. at 2). Subsequently, Plaintiff appealed the conviction to the North Carolina Superior Court and requested a jury trial which resulted in the charge being dismissed because it was "not a significant use of resources to seat a jury" for the charge. (Doc. No. 14-5). Nevertheless, the finding of probable cause and the initial conviction both lend significant weight to the argument that a reasonable officer would have thought Defendant's conduct violated a clearly established constitutional right, particularly where the charge was not dismissed for a constitutional violation but due to limited judicial resources.

Although Plaintiff's Third Amended Complaint is not clear on what, if any, verbal instructions Defendant gave Plaintiff while they both were in the laundry mat, the earlier iterations of Plaintiff's complaint and Defendant's answer present a more detailed picture. Specifically, Plaintiff's first complaint states that he first "heard a [sic] unknown voice, saying going back outside," then turned around, and saw it was a police officer who continued to say go back outside. (Doc. No. 1 at 6). Only as Plaintiff walked toward the door did "the city police being bumped up against" and after exiting the laundry mat that Plaintiff's "hand were suddenly satched [sic] to [his] back." (Id.). While Plaintiff's First Amended Complaint contains little detail on the August 4, 2014 interaction, Plaintiff's Second Amended Complaint corroborates Plaintiff's original telling of the interaction—that Plaintiff heard a voice instructing him to go back outside, turned around to see Defendant, a police officer, and only then did Defendant allegedly begin pushing Plaintiff toward the exit of the laundry mat. (Doc. No. 4 at 41). Additionally, Plaintiff's Response in Opposition to the Defendant's Motion also states that Plaintiff first heard a voice repeatedly say go back outside, saw that it was a police officer, and

only after Defendant got closer did he allegedly push or assault Plaintiff. (Doc. No. 18 at 5).

Finally, Defendant's answer further corroborates Plaintiff's earlier versions of the interaction.

Defendant stated that he "continuously instructed Plaintiff that he needed to step outside and

return to his vehicle." (Doc. No. 14 at 4). Simply put, Plaintiff's more detailed descriptions in

earlier pleadings and Defendant's description of the underlying events make clear that, even

taking the facts in the light most favorable to Plaintiff, Plaintiff heard a voice, saw a police

officer, and was instructed to exit the laundry mat. No physical contact occurred before those

events.

Defendant also contends that he made eye-contact with Plaintiff in the parking lot and

yelled at him repeatedly to stop, but Plaintiff continued to enter the laundry mat. (Doc. No. 14 at

3).[1] Even assuming that Plaintiff did not notice the eye contact and did not hear Defendant's

instructions, these facts would have given a reasonable officer the foundation to believe that

probable cause existed for an arrest.[2] Moreover, a reasonable officer would not have believed

---

[1]     Plaintiff does not seem to deny Defendant's statement that he yelled at Plaintiff to stop in the parking lot outside of the laundry mat. Indeed, Plaintiff argues that Defendant states "no real reason for yelling other than Plaintiff walking away after exiting the car, not running." (Doc. No. 18 at 7). The pace of Plaintiff's departure from the scene of the traffic stop is irrelevant, and either a walk or a run would certainly give a reasonable officer sufficient grounds to believe that arresting Plaintiff under the circumstances would not violate a clearly established constitutional right.

[2]     A reasonable officer also could have found probable cause to arrest Plaintiff for expired registration. Although a minor violation, even probable cause to believe a minor offence was committed gives a police officer authority to make a warrantless arrest. See Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001); Pegg v. Herrnberger, 845 F.3d 112, 118 (4th Cir. 2017) (granting qualified immunity to an arresting officer where the principal reason for arrest was a disputed obstruction charge where the plaintiff had also had an expired inspection sticker). Under North Carolina law, Defendant had authority to effect an investigatory arrest of Plaintiff for the expired registration. See North Carolina v. Gray, 286 S.E.2d 357, 359–60 (N.C. Ct. App. 1982).

that arresting Defendant under the circumstances involved the violation of a clearly established constitutional right.

Taking Plaintiff's allegations as true, Defendant also aggressively pushed Plaintiff, grabbed and shook his arms, "struck" him with handcuffs (instead of placing them on Plaintiff's wrists), and made the handcuffs too tight before placing him in the back of a police car for four to six hours. (Doc. No. 8 at 1–3). But these actions were not unreasonable under the circumstances, and certainly not so outrageous that a reasonable officer would think he was violating a clearly established constitutional right. A reasonable officer easily could have determined, under the same circumstances, that Defendant's actions were necessary to remove Plaintiff from the laundry mat, effect the traffic stop, and conduct a search for drugs, which Defendant suspected may be present in light of Defendant's perception that Plaintiff was attempting to avoid a traffic stop. Because Defendant's actions were not such that a reasonable officer would believe that he was violating a clearly established constitutional right, Defendant is entitled to the protection of qualified immunity. Accordingly, Defendant's Motion for Judgment on the Pleadings will be granted and Plaintiff's claims against Defendant will be dismissed.

B. Failure to State a Claim: Excessive Force

Defendant also contends that Plaintiff's excessive force claim should be dismissed for failure to state a claim. Like claims for unlawful arrest, excessive force claims relating to an arrest, investigatory stop, or other seizure of a person are governed by the Fourth Amendment objective reasonableness standard. Graham v. Connor, 490 U.S. 386, 388, 395 (1989). In other words, the Court must ask whether Defendant's use of force was objectively reasonable in light of the specific facts and circumstances presented to him, taking into consideration that officers

must make split-second decisions in uncertain and potentially dangerous situations.  Id. at 396–97.

But the Court need not delve too deeply into the analysis here because it is well-established in the Fourth Circuit that de minimus force cannot form the basis for excessive force claims under the Fourth Amendment.  See, e.g., Carter v. Morris, 164 F.3d 215, 219 n.3 (4th Cir. 1999) (holding that allegations that Plaintiff's handcuffs were too tight and the arresting officer pushed Plaintiff's legs into the police car were "so insubstantial" that they could not support an excessive force claim as a matter of law).  Even viewing Plaintiff's allegations most favorably to him, the aggressive pushing out of the store, forceful placement of handcuffs, and tight handcuffs while Plaintiff was detained in the police car are so insubstantial that they cannot form the basis of an excessive force claim.  Furthermore, Defendant acted objectively reasonable under the circumstances with which he was confronted, and therefore did not violate Plaintiff's Fourth Amendment rights.  Accordingly, Plaintiff's apparent claim for use of excessive force in the instant matter is not supported, as a matter of law, by the allegations of Defendant using insubstantial force while arresting Plaintiff.

**IV.    CONCLUSION**

**IT IS, THEREFORE, ORDERED** that:

1.  Defendant's Motion for Judgment on the Pleadings, (Doc. No. 15), is **GRANTED**;

2.  The Third Amended Complaint is **DISMISSED with prejudice**; and

3.  The Clerk of the Court is directed to close the case.

Signed: February 28, 2017

Robert J. Conrad, Jr.
United States District Judge